UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ASHLEY MANION, *et al.*,<br><br>    Plaintiffs,<br><br>    v.<br><br>VINTAGE PHARMACEUTICALS LLC dba<br>QUALITEST PHARMACEUTICALS, *et al.*,<br><br>    Defendants.<br>_____/ | No. C-13-2996 EMC<br><br>**ORDER GRANTING DEFENDANTS CVS PHARMACY, INC. AND LONGS DRUG STORES OF CALIFORNIA LLC'S MOTION TO DISMISS WITH LEAVE TO AMEND**<br><br>**(Docket No. 21)** |

       Plaintiffs Ashley Manion and Brian Dodd ("Plaintiffs") filed suit against Defendants Vintage Pharmaceuticals LLC d.b.a. Qualitest Pharmaceuticals; Endo Pharmaceuticals, Inc.; Endo Pharmaceuticals Holding, Inc.; Pantheon Inc.; CVS Pharmacy, Inc.; Longs Drug Stores of California LLC; and Does 1 through 100, Inclusive. Plaintiffs asserted causes of action for strict products liability, negligent design and manufacture, failure to warn, and negligence. Plaintiffs allege that Manion's use of defective birth control pills that the defendants either manufactured or sold resulted in an unintended pregnancy.

       Currently pending before the Court is CVS Pharmacy, Inc. and Longs Drug Stores of California LLC's ("CVS") motion to dismiss ("Motion") pursuant to Federal Rule of Civil Procedure 12(b)(6). CVS asserts that Plaintiffs' claim against it is barred by the statute of limitations under California Code of Civil Procedure Section 340.5. Having considered the papers and arguments at hearing, the Court **GRANTS** CVS's motion to dismiss with leave to amend, for the reasons set forth below.

## I. FACTUAL & PROCEDURAL BACKGROUND

Plaintiffs filed their initial complaint on May 23, 2013 in the Superior Court of the State of California for the County of Napa. *See* Docket No. 1 at 12. The operative complaint is the First Amended Complaint ("FAC"), filed on June 18, 2013. *See id.* at 71. Defendants removed the action to federal court on June 28, 2013. *See id.* at 1.

In July and August 2011, Manion purchased the birth control pill Tri-Previfem from a CVS Pharmacy in Napa, California and used them. FAC ¶ 14. Plaintiffs allege that the packaging of the pills was defective because the packaging was incorrectly rotated 180 degrees, causing a mismatch between the actual sequence of the pills and the sequence indicated on the package. FAC ¶ 13. This allegedly resulted in Manion taking placebo pills when she should have been taking active pills. *Id*. Plaintiffs allege that, due to this defect, Manion became pregnant unintentionally. FAC ¶ 15. Manion gave birth to Plaintiffs' daughter on June 3, 2012. *Id*.

On September 15, 2011, a recall of Tri-Previfem pills was issued, and CVS was notified of the recall. FAC ¶ 34. CVS notified Manion of the recall in a letter via U.S. Mail, dated September 26, 2011. FAC ¶ 34.

The only cause of action Plaintiffs assert against CVS is for negligence. Plaintiffs assert that CVS had a legal duty to notify their customers of the recall and notify them that they should not rely on the pills to prevent pregnancy. FAC ¶ 34. Plaintiffs assert that CVS breached this duty by failing to notify Plaintiffs until September 26, 2011, eleven days after the recall was issued. FAC ¶ 35. Plaintiffs assert that this delay was a substantial factor in causing Manion's unintended pregnancy and birth of Plaintiffs' daughter. FAC ¶ 36.

## II. DISCUSSION

A. Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss based on the failure to state a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6). A motion to dismiss based on Rule 12(b)(6) challenges the legal sufficiency of the claims alleged. *See Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). A defendant may raise a statute of limitations defense in a motion to dismiss if "the running of the statute is apparent on the face of the

2

complaint." *Jablon v. Dean Witter & Co.*, 614 F.2d 677 (9th Cir. 1980). In considering a motion to dismiss, a court must take all allegations of material fact as true and construe them in the light most favorable to the nonmoving party, although "conclusory allegations of law and unwarranted inferences are insufficient to avoid a Rule 12(b)(6) dismissal." *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009).

B.  <u>Code Of Civil Procedure Section 340.5</u>

CVS claims that Plaintiffs' cause of action is barred by the statute of limitations under California Code of Civil Procedure Section 340.5. Mot. at 3. Section 340.5 states in relevant part:

> In an action for injury or death against a health care provider based upon such person's alleged professional negligence, the time for the commencement of action shall be three years after the date of injury or one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the injury, whichever occurs first. . . .
>
> For the purposes of this section:
>
> (1) "Health care provider" means any person licensed or certified pursuant to Division 2 (commencing with Section 500) of the Business and Professions Code, or . . . .
>
> (2) "Professional negligence" means a negligent act or omission to act by a health care provider in the rendering of professional services . . . provided that such service are within the scope of services for which the provider is licensed . . . .

CVS first argues that Plaintiffs' negligence claim is governed by Section 340.5 because CVS is a "health care provider" and because the claim is based on CVS's "professional negligence" within the meaning of Section 340.5. Mot. at 4. CVS then argues that Plaintiffs discovered Manion's injury – her unintended pregnancy – no later than September 26, 2011 because Plaintiffs were put on inquiry notice by CVS's letter of that date. *Id*. at 5, 8. Therefore, CVS argues, the statute of limitations under Section 340.5 ran on September 26, 2012. *Id*. at 6. Accordingly, Plaintiffs' action would be barred, because the first complaint was filed on May 23, 2013, nearly six months after the statute of limitations ran.

If Section 340.5 does not apply, then the statute of limitations is two years, since the action is for "injury to an individual" caused by the "neglect of another." Code Civ. Proc. § 335.1. Plaintiffs' claim would be within the two-year limitations period.

3

1. Does Section 340.5 Govern?

   a. Is CVS A "Health Care Provider" Under Section 340.5?

CVS is a "health care provider" within the meaning of Section 340.5. "Health care provider" includes any person licensed or certified pursuant to Division 2 (commencing with Section 500) of the Business and Professions Code. Civ. Code § 340.5(1). Division 2 requires every person conducting a pharmacy in California to be licensed by the California State Board of Pharmacy. Bus. & Prof. Code §§ 4110, 4018. CVS has submitted its pharmacy license in a request for judicial notice. *See* Docket No. 50.

   b. Is Plaintiffs' Action For "Professional Negligence"?

Plaintiffs assert that their action is for negligence, not professional negligence. Opp. at 4-5. Section 340.5 governs if CVS was rendering professional services for which it was licensed, regardless of whether Plaintiffs label their cause of action as "ordinary negligence" or "professional negligence." *See Hedlund v. Superior Court*, 34 Cal.3d 695 (1983) (Section 340.5 applied to psychologists for failure to warn of the threat their patient posed to plaintiff, despite plaintiff's assertion that the action was for ordinary, not professional, negligence.)

"Courts have broadly interpreted 'in the rendering of professional services,' concluding that a negligent act that occurs in the rendering of services for which the health care provider is licensed is professional negligence." *Yun Hee So v. Sook Ja Shin*, 212 Cal.App.4th 652, 663 (2013). Courts have found Section 340.5 governed where the plaintiff was injured in the back of an ambulance when it hit a curb (*Canister v. Emergency Ambulance Serv.*, 160 Cal. App. 4th 388 (2008)); and where the patient fell off an X-ray table while she was left unattended (*Bellamy v. Appellate Department*, 50 Cal.App.4th 797 (1996)).

Courts have held that Section 340.5 does not govern where the defendant's conduct was not for the purpose of delivering health care. For example, where the defendant doctor showed the plaintiff blood and tissue that had been suctioned from her, for the purpose of persuading her not to report to the hospital that she had awakened during surgery (*Yun Hee So*, 212 Cal.App.4th at 667); or where the doctor induced the plaintiff patient to enter into sexual relations (*Atienza v. Taub*, 194 Cal.App.3d 388 (1987)).

4

1   CVS was rendering professional services for which it was licensed when it notified Plaintiffs
2   of the Tri-Previfem recall. "Pharmacy practice is a dynamic patient-oriented health service that
3   applies a scientific body of knowledge to improve and promote patient health by means of
4   appropriate drug use, drug-related therapy, and communication for clinical and consultative
5   purposes." Bus. and Prof. Code § 4050. Notifying a patient of a drug's defect is communication to
6   "promote patient health." The purpose of CVS's conduct was to deliver health care, unlike in the
7   cases where courts have declined to apply Section 340.5.

8   Plaintiffs argue that it would be anomalous to apply Section 340.5 to CVS when CVS was
9   acting as a mere conduit of the manufacturer's recall. Opp. at 5. During the hearing, Plaintiffs
10  emphasized that it does not take the skill or experience of a pharmacist or other health care
11  professional to send notices of drug recalls to patients. Plaintiffs offered that the reason doctors and
12  pharmacists are the ones to send drug recall notices is because, as a practical matter, they are the
13  only ones who have direct communication with patients.

14  Adopting the narrow view of "professional negligence" that Plaintiffs urge would run
15  counter to the broad interpretation courts have given. The Court is disinclined to find that a
16  pharmacy is rendering professional services for which it is licensed when it dispenses drugs, but not
17  when it informs patients of recalls of those drugs. As courts have noted, a health care provider may
18  perform a variety of tasks while rendering professional services that require different levels of skill.
19  *See Bellamy v. Appellate Department*, 50 Cal.App.4th 797, 808 (1996). A task is not excluded from
20  the scope of professional services simply because it does not require "any particular skill, training,
21  experience or exercise of professional judgment." *Id*. The test is whether the defendant was
22  rendering services for which it is licensed, not the level of skill required. *See id.* at 806.

23  The cases Plaintiffs cite do not support Plaintiffs' contention that CVS committed ordinary
24  rather than professional negligence. In *Flores v. Natividad Medical Center*, 192 Cal. App. 3d 1106
25  (1987), a state prisoner sued the State of California after he sustained brain damage as a result of two
26  prison doctors' negligent treatment and delay in summoning further medical aid. The plaintiff
27  brought a cause of action for violation of Government Code Section 845.6 – under which the State
28  may be liable for an employee's failure to summon medical care for a prisoner – and in the

5

alternative, for the negligence of the doctors. *Flores*, 192 Cal. App. 3d at 1115. The doctors' negligence could not be a basis for the suit because the State is not vicariously liable for the medical malpractice of its employees. *Id*. at 1115. The issue was not whether the action was for negligence or professional negligence, as it is here, but rather, whether a provision of the Medical Injury Compensation Reform Act, of which Section 340.5 is also part, would apply to Government Code Section 845.6. *Id*. at 1114. Like Section 340.5, the provision placed limitations on actions against a "health care provider" for "professional negligence." *Id*. The court held that the provision did not apply to Section 845.6, explaining "[i]t would be . . . anomalous . . . to insulate the State from liability simply because, fortuitously, the employees who failed to summon assistance were doctors rather than prison personnel." *Id*. at 1117. The court also noted that the State had not argued that it was a "health care provider." *Id*. at 1116. Thus, Section 845.6 applied. As the focus of the court in *Flores* was on the statute particular to the facts of that case, the issue presented in the case at bar was not addressed in *Flores*.

Contrary to Plaintiffs' contention, the court in *Pino v. City of Sacramento*, 2007 WL 214451 (E.D. Cal. 2007), did not "recognize[] that plaintiff controlled the allegation, which was grounded in ordinary negligence, despite defendant's attempt to convert the claim to one of professional negligence." Opp. at 4. The court merely stated that the plaintiff's assertion that the claim was for negligence rather than professional negligence was immaterial to the existence of defendants' duty. *Pino*, 2007 WL 214451 at *5, n.7.

The Court concludes that CVS is a "health care provider" and was rendering "professional services" for which it was licensed. Thus, Section 340.5 governs Plaintiffs' claim of negligence against CVS.

### 2. Statute Of Limitations Under Section 340.5

#### a. What Is The "Injury"?

A plaintiff must commence an action under Section 340.5 no more than "one year after the plaintiff discovered, or with reasonable diligence should have discovered, the injury." Civ. Pro. Code § 340.5. CVS claims that the injury was the conception, while Plaintiffs claim that the injury was the birth. The parties agree that there is no California authority that clearly decides the issue.

The Court finds that the "injury" that commenced the limitations period under Section 340.5 was the conception, rather than the birth, of Plaintiffs' child. It does so for several reasons. First, the essence of Plaintiffs' complaint in the instant case is that the birth control pills were defective because they were ineffective at preventing *pregnancy*. The claim against CVS – failure to warn of the defect in time to prevent Manion's pregnancy – derives from this alleged defect. Second, in an analogous context, the California Court of Appeal has held that the statute of limitations under Section 340.5 for a sterilization operation negligently performed on a husband began to run upon knowledge of the wife's *pregnancy*, contrary to the husband's claim that it began to run upon birth. *Christ v. Lipsitz*, 99 Cal.App.3d 894, 897-98 (1979). The injury that triggered Section 340.5 was the pregnancy, rather than the birth. Third, it is established that damages are available for injuries that arise *before* birth, such as the "mental suffering attendant to the unexpected pregnancy because of the complications which may or may not result." *Custodio v. Bauer*, 251 Cal.App.2d 303, 323 (1967). Where a plaintiff brings an action against a medical professional for a failed sterilization or abortion, plaintiff is entitled, as in other tort actions, to "all foreseeable consequences of the failure" of the procedure, including pre-birth damages. *See id.*; *Stills v. Gratton*, 55 Cal.App.3d 698, 709 (1976). *See also Turpin v. Sortini*, 31 Cal.3d 220, 226-227 (1982) (discussing with apparent approval *Custodio* and *Stills*). Thus, in *Custodio*, the plaintiffs had a valid cause of action for negligent performance of a sterilization operation *before* their child's birth. Conversely, an individual has a cause of action for wrongful pregnancy even if she does not carry the pregnancy to term and give birth.[1]

The cases Plaintiffs cite do not support their contention that the injury is birth rather than pregnancy. As noted above, *Custodio* held that the plaintiffs could recover damages for a sterilization procedure that was negligently performed, even if the child was born healthy, as

---

[1] CVS cites an Arizona Supreme Court decision to support their argument that the injury is the conception rather than birth, but the decision does not go so far. It merely describes a "wrongful pregnancy/conception" action as an action in which "parents of a normal but unplanned child seek damages either from a physician who allegedly was negligent in performing a sterilization procedure or abortion, or from a pharmacist or pharmaceutical manufacturer who allegedly was negligent in dispensing or manufacturing a contraceptive prescription or device." *Walker by Pizano v. Mart*, 164 Ariz. 37, 39 (1990). The opinion does not define the injury that triggers the statute of limitations. For convenience, this definition of "wrongful pregnancy" will be used hereinafter.

1  opposed to born with mental or physical defect.[2]  Another case Plaintiffs cite, *Stills*, *supra*, simply
2  confirmed that "the usual damages recoverable under established tort principles" were available in
3  wrongful pregnancy actions, no different from other malpractice actions.  *Stills*, 55 Cal.App.3d at
4  708.

      Plaintiffs also refer to their cause of action as "wrongful birth."  Opp. at 6.  Although courts and commentators have not always been consistent with terminology, "wrongful birth" refers to "claims brought by parents . . . against medical professionals whose negligence proximately caused the birth of hereditarily afflicted children."  *Turpin v. Sortini*, 31 Cal.3d 220, 225 (1982).  Even in wrongful birth cases, there seems to be no California authority that establishes when the statute of limitations begins to run.  CVS acknowledges a Washington case where the court held that the statute of limitations for wrongful birth actions ran from the birth.  The court explained:

> Until [] birth, a plaintiff cannot know whether she will miscarry or whether the child will be born alive, without defect.  Nor can the parents know the extent of defects.  In other words, until the birth the parents cannot know whether the physician breached his duty not to contribute to the birth of a deformed child.  *Quimby v. Fine*, 45 Wash. App. 175, 179 (1986).

By contrast, in wrongful *pregnancy* actions, parents know of the alleged breach once the child is conceived; the claim accrues at the time the parents are aware of the pregnancy.  The essence of Plaintiffs' claim herein is wrongful pregnancy, not wrongful birth.  *See* Compl. ¶¶ 13, 32, 36.

      The Court rejects Plaintiffs' assertion at the hearing that they could confine their cause of action to one for wrongful birth (and not wrongful pregnancy) if they claimed only damages that occurred after the birth, and not before.  Given that birth is not a necessary element of a wrongful pregnancy action, to permit this recharacterization would allow the plaintiffs unilaterally to avoid the statute of limitations simply by claiming damages for a shorter period.  The statute of limitations cannot be so easily circumvented especially where the essence of the claim is not wrongful birth involving a hereditarily afflicted child, but a wrongful pregnancy.  The general rule is that statutes of

---

[2] Until then, for reasons of public policy, courts were unwilling to recognize that the birth of a healthy child was anything but a "blessed event."  *Custodio*, 251 Cal.App.2d at 321; *see also* William Lloyd Prosser, *et al.*, Prosser and Keeton on Torts 372 (5th ed. 1984).

limitations begin to run when "the wrongful result occurs." *See Norgart v. Upjohn Co.*, 21 Cal.4th 383, 397 (1999). The wrongful result here is conception, not birth.

For the reasons above, the Court finds that the "injury" for the purpose of Section 340.5 was the conception.

### b. When Did The Statute Of Limitations Begin To Run?

"Possession of 'presumptive' as well as 'actual' knowledge commences the running of the statute." *Sanchez v. S. Hoover Hosp.*, 18 Cal.3d 93, 101 (1976). "[P]laintiffs are charged with presumptive knowledge of an injury if they have information of circumstances to put them on inquiry or if they have the opportunity to obtain knowledge from sources open to their investigation." *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 808 (2005) (citing *Sanchez*, 18 Cal.3d at 101).

Plaintiffs had presumptive, if not actual, knowledge of Manion's pregnancy at least one year before they filed the initial complaint on May 23, 2012. Plaintiffs do not plead when they discovered Manion's pregnancy. However, by May 23, 2012, Plaintiffs had been put on inquiry that the pills might have been ineffective at preventing pregnancy, because they had received the notice from CVS six months earlier. The physical symptoms attendant to pregnancy further put Plaintiffs on inquiry. As pointed out by CVS, the date of conception was no later than September 26, 2011, since Plaintiffs plead that CVS's failure to notify them of the defect before this date was a cause of their injury. Mot. at 6; FAC ¶ 36. It follows that, by May 23, 2012, Manion was at least 34 weeks into her pregnancy. If not already obvious, Manion could have easily confirmed her pregnancy through a pregnancy test.

One can reasonably conclude that Plaintiffs discovered, or "through the use of reasonable diligence should have discovered," Manion's pregnancy before May 23, 2012.

### C. Leave to Amend

The "discovery rule" postpones the running of the statute of limitations "until the plaintiff discovers, or has reason to discover the cause of action." *Fox*, 35 Cal.4th at 807. "A plaintiff whose complaint shows on its face that his claim would be barred without the benefit of the discovery rule must specifically plead facts to show (1) the time and manner of discovery and (2) the inability to

have made earlier discovery despite reasonable diligence." *Id.* at 808 (citing *McKelvey v. Boeing North American, Inc.*, 74 Cal. App. 4th 151, 160 (1999)).

Section 340.5 codifies the discovery rule. *See id.* (giving Section 340.5 as an example where the legislature codified the discovery rule). (Section 340.5 also sets an upper bound of 3 years from the date of injury, discovery or no discovery.) Without the benefit of the discovery rule, the statute of limitations would have started running upon the conception of Plaintiffs' child, barring Plaintiffs' claim. Plaintiffs are permitted leave to amend, only to plead, in accordance with *Fox*, additional facts showing when and how Plaintiffs discovered Manion's pregnancy, and, if they were unable to discover the pregnancy despite reasonable diligence, explain why. While the Court is skeptical of Plaintiffs' ability to plead facts sufficient to invoke the discovery rule to avoid the statute of limitations since she appears to have been 34 weeks into her pregnancy at the time the one year limitations period began, it will give them one opportunity to do so.

The Court **GRANTS** CVS's motion to dismiss with leave to amend.

This order disposes of Docket No. 21.

IT IS SO ORDERED.

Dated: October 16, 2013

_____
EDWARD M. CHEN
United States District Judge